UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.   : | Case No. 03-Cr-0554 (JR) |
| : | |
| ALVARO AUGUSTIN MEJIA, : | |
| Defendant   : | |

\*\*\*\*\*

**MOTION OF ALVARO AUGUSTIN MEJIA FOR
JUDGMENT OF ACQUITTAL, FOR NEW TRIAL
AND TO ADOPT THE MOTIONS FILED BY CODEFENDANTS**

Alvaro Augustin Mejia, by and through his counsel, respectfully moves for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, respectfully moves this Court to grant a new trial pursuant to Fed. R. Crim. P. 33. Mr. Mejia also respectfully requests that the Court allow him to adopt and incorporate by reference the Motions for Judgment of Acquittal and New Trial filed by his codefendant, Mr. Del Cid Morales.

**I.   STANDARD OF REVIEW – RULE 33 MOTION FOR NEW TRIAL**

Rule 33 gives great discretion to the trial court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "In considering such a motion, the trial court "weighs the evidence and evaluates the witnesses' credibility and decides whether 'a serious miscarriage of justice may have occurred.' " *United States v. Williams,* 29 F. Supp. 2d 1, 3 (D. D.C. 1998) (Robertson, J.)[1] quoting *Tibbs v. Florida,* 457 U.S. 31, 38 n. 11 (1980). "Unlike a motion for judgment of acquittal, when ruling on a motion for a new trial 'the Court need not accept the evidence in the light most favorable to the government, and [it] may weigh the testimony and may

---

[1] A panel of the Court of Appeals, 214 F.3d 1359 (D.C. Cir. 2000) reversed the new trial order but the Court of Appeals, en banc, 234 F.3d 36 (D.C. Cir. 2000) granted rehearing in banc and vacated the panel decision that had reversed the new trial order. A full pardon granted by the President of the United States rendered the pending en banc appeal moot.

consider the credibility of the witnesses.'" *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (citing *United States v. Edmonds,* 765 F. Supp. 1112, 1118-19 (D.D.C. 1991)). Indeed, under Rule 33 a district court assesses the weight of the evidence sitting as a "thirteenth juror." *See, e.g., Brodie v. United States*, 295 F.2d 157, 160 (D.C. Cir.1961); *United States v. Robinson*, 71 F. Supp. 9, 12 (D.D.C. 1947).

Whether to grant a motion for a new trial is "a decision committed to the Court's sound discretion." *United States v. Neill,* 964 F. Supp. 438, 441 (D.D.C.1997). "Any error of sufficient magnitude to require reversal on appeal" is an adequate ground for granting a new trial. 3 Wright, King & Klein, Federal Practice and Procedure § 556 (3d ed.2004). On appeal, a deferential standard of review is applied and the district court's decision will be reversed "only if the court abused its discretion or misapplied the law." *United States v.Kelly,* 790 F.2d 130, 133 (D.C. Cir. 1986).

A prosecutor's statements in closing argument warrant a new trial when the "entail a serious error that is prejudicial to the defendant." *United States v. Watson,* 171 F.3d 695, 699 (D.C. Cir.1999). As the D. C. Circuit has explained,

> It is a serious error "for counsel to make statements in closing argument unsupported by evidence, to misstate admitted evidence, or to misquote a witness' testimony." *Id.*; *see also United States v. Blueford,* 312 F.3d 962, 968 (9th Cir.2002) (error where prosecution "propound[s] inferences that it knows to be false, or has very strong reason to doubt").

*United States v. Earle*, 375 F.3d 1159, 1163 (D.C. Cir. 2004). Cumulative errors can also warrant a new trial. *See also United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (cumulative effect of government's suppression of evidence that its star witness personally disliked defendant, the criminal history of one of the government's testifying witnesses, and complete description of the benefits

accorded the testifying aliens constituted a Brady violation warranting a new trial); .

In this case, the conviction of Mr. Mejia resulted from a series of prosecutorial errors, that singly or in combination resulted in a fundamental miscarriage of justice and a conviction that violated the rights guaranteed to Mr. Mejia under the Constitution of the United States. Mr. Mejia is factually and legally innocent of the crime for which he stands convicted. Accordingly, the Court should grant him a judgment of acquittal or, in the alternative, grant her a new trial.

## II.     FACTS AND PROCEDURAL HISTORY

Mr. Mejia stands convicted after a jury trial of one count of Conspiracy to Import Five Kilograms or More of Cocaine into the United States, and Conspiracy to Manufacture and Distribute Five Kilograms or More of Cocaine, Knowing and Intending That it Would be Imported Into the United States, in violation of 21 U.S.C. §§ 963, 952, 959, and 960.

As the Court is well aware, the government alleged that its confidential informant posing as a Colombian drug dealer entered into an agreement with Mr. Mejia and others for safe passage through Guatemala of a shipment of cocaine from Colombia to the border with El Salvador. The safe passage was to be provided by high-level Guatemalan government and police officials. At the time of the offense, Mr. Mejia was not a high level Guatemalan official but represented himself to the confidential informant as someone who was. No evidence was presented by the government that Mr. Mejia in fact knew the high level official, whose name he used, that he contacted that high level official or any other Guatemalan official for the purpose of providing the safe passage. Nor was there any evidence presented that any of the codefendants made any contacts with any Guatemalan officials. At no time, was any cocaine actually transported or shown to Mr. Mejia.

### III. ERRORS WARRANTING A NEW TRIAL

Much of the government's rebuttal argument was unsupported by the evidence or just untrue. Such serious errors were prejudicial to Mr. Mejia and warrants a new trial.

> For a prosecutor's statements in closing argument to warrant a new trial, they must entail a serious error that is prejudicial to the defendant. *United States v. Watson,* 171 F.3d 695, 699 (D.C. Cir.1999). It is a serious error "for counsel to make statements in closing argument unsupported by evidence, to misstate admitted evidence, or to misquote a witness' testimony." *Id.*; *see also United States v. Blueford,* 312 F.3d 962, 968 (9th Cir.2002) (error where prosecution "propound[s] inferences that it knows to be false, or has very strong reason to doubt").

*United States v. Earle*, 375 F.3d 1159, 1163 (D.C. Cir. 2004). In particular, Mr. Laymon makes several statements during his rebuttal argument that were unsupported by the evidence or misstated admitted evidence.

### A. The Government Falsely Argued to the Jury that Mr. Mejia Lived in Guatemala City at the Time of the Offense and Without Any Evidence of Record to Support That Argument

In his rebuttal argument, Mr. Laymon told the jury that Mr. Mejia lived in Guatemala City, a four to six hour ride to where he had met with codefendants Contanza Bran, Del Cid Morales and the cooperating witness. The evidence however did not support Mr. Laymon's argument to the jury. There also was no evidence introduced at trial of the travel time between Mr. Mejia's home and San Salvador. Yet, the prosecutor argued to the jury:

> But, where did this defendant live? He lived in Guatemala City. How far is it from Guatemala City to San Salvador, El Salvador? It's a four- to six-hour ride. He's riding with Bran, Del Cid Morales, Bardales.

TR Mar 5 PM at 7-8. A few moments later, Mr. Laymon repeats that Mr. Mejia lived in Guatemala

City:

> Here's a Defendant, Mr. Mejia, who leaves his home in Guatemala City and drives four to six hours across an international border with another country where he stopped and checked. He then drives to the Capitol City of El Salvador.
>
> MS. HERNANDEZ: Your Honor, objection. The record doesn't reflect that he lived in Guatemala City at this point.
>
> THE COURT: All right. That objection is noted. The jury will rely on its memory of the facts.
>
> MR. LAYMON: He then drives to El Salvador four to six hours down the road, and he does this how many times? Not once, not twice, not three times.

TR Mar 5 PM at 11-12. In fact, the evidence elicited by Mr. Laymon on cross-examination of Mr. Pivaral was that Mr. Mejia does not live in Guatemala City, without any indication of when he last lived there.

> Q. And as far as you know, has [Mr. Mejia] always lived in Guatemala City?
> A. He no longer lives there now.

TR Mar 5 AM at 36. Thus, Mr. Laymon's affirmative statement in his rebuttal that Mr. Mejia had driven several hours from his home in Guatemala City to another location is not true and was not supported by the evidence.

> **B.      The Government's Arguments About the DEA, The Guatemalan Police and A Bloody Civil War Were Not Supported by Any Evidence in the Record**

Again, Mr. Laymon makes statements to the jury unsupported by the evidence at trial.

> Now, this gentleman, Mr. Mejia, has in his wallet a list of the DEA agents. Why? Why is it there? It's there because Guatemalan police are essentially powerless to deal with the overwhelming number of Colombian drug-traffickers that are sending cocaine into Guatemala,

5

>and because they're just recovering from -- not just, but several years ago, they're coming out of a bloody civil war.
>
>MS. HERNANDEZ: Objection, Your Honor, there's no evidence in the record of this.
>
>THE COURT: I think there is minimal evidence, but why don't you move on from that because I don't think there is anything -- certainly nothing more than he's mentioned.

TR Mar 5 PM at 13.

### C. The Government Falsely Argued to the Jury that Mr. Mejia Was the Only Former Police Officer Allegedly Involved in the Conspiracy

Once again in his rebuttal, the prosecutor made statements to the jury that are not supported by the evidence. Indeed, in this case, the prosecutor made an argument that he knew was not true – that Mr. Mejia was that the reason Mr. Mejia was brought into the conspiracy was to provide someone with law enforcement background, which they did not otherwise have. It was an argument that was directly contrary to evidence that this very prosecutor presented at the trial of codefedant Del Cid Morales. In fact, as the prosecutor well knows, at the trial of Del Cid Morales he argued that Del Cid Morales is a former Guatemalan police officer. Several reports prepared by the case agent and other DEA special agents reflect that the agents had verified that Del Cid Morales was a former police officer at a higher rank that Mr. Mejia.

The Court denied the contemporaneous Motion for a Mistrial made by the defense because Mr. Laymon persuaded the Court that he had not actually argued that fact to the jury. At the time the motion was argued, counsel did not have the benefit of a transcript.[2] The transcript makes clear however, that in his rebuttal the prosecutor indeed argued that "the reason they need Mr. Mejia is

---

[2] Undersigned counsel's recollection is that the contemporanous transcript was not available on that day because of a malfunction.

because he brings to it something that they apparently don't have, and that is law enforcement experience."

> How else do we know that Mejia knowingly and voluntarily joined this conspiracy? Well, look at Del Cid Morales' phone book for a moment. Now, you go, well, what's that mean? Well, Del Cid Morales had a phone book, and inside that phone book was the number for Bardales and the number for Eric Constanza Bran.
>
> Now, as far as I know, Mejia's number is not in that phone book. So what does that tend to show you? This is a phone book, little book that Del Cid Morales is carrying around. It's clear that he has some kind of prior relationship with Eric Constanza Bran and Bardales because, yes, their phone number is in his book. So they've got -- so we've got Bardales, Del Cid Morales and Bran together. So why do they need Mejia? Why not just Bran and Bardales and Del Cid Morales do it? Why do they need Mr. Mejia to join this conspiracy?
>
> **Well, the reason they need Mr. Mejia is because he brings to it something that they apparently don't have, and that is law enforcement experience.** 15 years, not only as a cop on the beat apparently, but as a supervisor, as someone with a sufficiently sophisticated position that he was planning major operations, and that's why they needed Mr. Mejia. That's why they recruited him into this conspiracy.

TR Mar 5 PM at 14-15 (emphasis added).

Thereafter, counsel for Mr. Mejia objected to this argument.

> MS. HERNANDEZ: Can I approach?
>
> THE COURT: One second, ladies and gentlemen. Counsel approach, please.
>
> (AT THE BENCH; ON THE RECORD.)
>
> THE COURT: Ms. Hernandez.

MS. HERNANDEZ: Your Honor, two things. No. 1, if I understood Mr. Laymon correctly, he told the jury that my client was making this case because they needed a person who had former law enforcement experience.
I'm not exactly sure where it came out, but Mr. Del Cid Morales, and the Government will know, is a former general or comisario in the national police, so either he misstated the evidence or -- that came in or he knows otherwise that that's not true, that is, there was -- Del Cid Morales is a former PNC officer.

THE COURT: So what's your point?

MS. HERNANDEZ: Well, I object to the mischaracterization of the evidence; more than mischaracterization, it's a wholesale not true.

THE COURT: Mr. Laymon?

MR. LAYMON: Well, since I just said it, Judge, I recall specifically what I said, and that was that the existence of the phone book of Del Cid Morales showed that he was apparently previously acquainted with Bardales and Constanza Bran.

And the point I made was that since they already knew one another, why invite Mr. Mejia to the party? To which I said, in response to my own question, was that he had this unique background as a cop for 15 years with supervisory experience and directing logistical operations, which is true.

THE COURT: I think you also did say that they needed him because he uniquely provided that experience.

MR. LAYMON: Well, he did uniquely provide that experience. We don't have any idea, really. We know that Del Cid Morales was a former cop, but we don't know for -- really for how long or what his job was, where he served or what he did.

THE COURT: Certainly the jury does not know that.

MR. LAYMON: And certainly the jury doesn't know

that.

MS. HERNANDEZ: It's not true -- it's not true that they needed him -- I don't have it in front of me, but it's not true that they needed -- uniquely needed someone with law enforcement experience and that's why they brought in Mejia, because in fact, Mr. Laymon knows and the record is replete with references to the fact that Del Cid Morales is not only a former police officer, but at a higher rank than my client because he was supposed to be a comisario, not -- my client is two steps down. I think it's completely misstating the facts. I mean, and he's saying, this is --

THE COURT: He's not misstating the facts. There is nothing inconsistent in the facts before this jury about you're saying it's a misrepresentation of --

MS. HERNANDEZ: He's lying to the -- I'm sorry. He's lying to the jury on information that he personally knows is not true. He knows that Mr. Mejia is not uniquely the only person with former Guatemalan law enforcement experience. He knows that. And I don't think the Government is allowed to make that kind of misrepresentation.

THE COURT: I think you can respond to that, Mr. Laymon, because it's fairly strong language.

MR. LAYMON: Judge, the bottom line with Del Cid Morales is exactly what I said. For example, Ms. Hernandez seems to think he was some kind of high ranking comisario. I don't know that. I don't know exactly what Del Cid Morales did in the police. Today, as a result of some of the evidence the Defendant put in, we have a much clearer understanding of what Mr. Mejia's role was. We don't have that kind of understanding with Del Cid Morales. That's it.

MS. HERNANDEZ: There's the DEA-6 that I can submit to the Court in which there was follow-up from a -- from the, whatever, the Government -- it's the country attache' or whatever they refer to the agent, which states that -- what Del Cid Morales' former experience was, and in fact, that DEA-6 says nothing about my client, and I personally questioned that.

THE COURT: All right. Based on all that I know, I think it's clear there is not a significant representation of facts to the jury. I think it is fair for the Government to argue that the co-conspirators needed Mr. Mejia for his law enforcement experience. Whether Mr. Del Cid Morales also supplied some law enforcement experience is not clear on the record.

It is clear that everyone thought he did, and that's what the both -- both of them were brought in for security and based on prior relevant law enforcement or related experience, and I think the jury will be able to sort that out with respect to uniquely. Indeed, to some extent, based on the evidence before me, the jury may be able to conclude that Del Cid Morales was also supplying that experience, but that's an inference the jury can make.

MS. HERNANDEZ: Well, Your Honor, the evidence before the jury is that Del Cid Morales represented himself to be a general, but I'm not sure that there was actual evidence that he was a former general.

THE COURT: I don't think there is evidence to that effect in the record.

MS. HERNANDEZ: I don't think the Government can stand in front of the jury, first of all, than if there is no evidence -- I don't think the Government can stand in front of the jury and argue from a fact, and that's what they've done, that they know to be untrue. I just don't -- my belief is that they're prohibited.

And as you said, I mean, the term you use is "uniquely" because they were looking for someone with law enforcement experience. They know that's not true.

THE COURT: But his argument in terms of uniquely is not just that he's a cop and nobody else is a cop. It was that he had certain experience as a cop. That's what Mr. Laymon said.

MS. HERNANDEZ: Which is also inconsistent because he asked specifically if he's -- if he's drawing that from the

witness I put on the stand today, he specifically asked did he
have any experience with drug investigations and the gentleman
said, no, he did not, that his experience was with delinquency
matters.

THE COURT: I think Mr. Laymon went right up to the
line but didn't cross the line, because what he said was, if I
recollect correctly, he had experience planning operations but
he did not say anything about drug-related operations. Is my
memory correct, Mr. Laymon?

MR. LAYMON: Which I said law enforcement
operations.

THE COURT: Law enforcement operations. And that is
consistent with the testimony of the witness. So I'm going to
overrule your objection. I take it it was an objection.

MS. HERNANDEZ: It is an objection, and I would ask
that the Court be informed that the --

THE COURT: Court be informed?

MS. HERNANDEZ: I'm sorry, that the jury be informed
that Mr. Del Cid Morales was, in fact, a former police
officer.

THE COURT: It's not in the record. I can't inform
them of something that's not in evidence before them. You
can't inform them of something that's not in evidence. You
could have asked -- if you wanted to put that in the record,
you could have --

MS. HERNANDEZ: I didn't. But I didn't stand in
front of the jury and tell -- and misrepresented what I know
to be true.

THE COURT: I certainly think it was any kind of a significant misrepresentation, misrepresentation. I don't think it was and I cannot provide the jury with, quote/unquote, evidence, facts that are not in evidence
before them.

MS. HERNANDEZ: Well, then it's -- then I -- first,

11

>if it's done in rebuttal, it is --
>
>THE COURT: I mean, if you and the Government want to stipulate to something, I suppose I could tell them a stipulation even at this point, but I'm not able to provide evidence to the jury. That's not what the Court can do.
>
>MS. HERNANDEZ: I understand. Then I think -- unless the Government withdraws that statement, I think I would ask again for a mistrial.
>The second item --
>
>THE COURT: I deny your request for a mistrial.

*Id.* at 19-24.

The government's erroneous and false arguments were even more prejudicial because they were made in rebuttal, when counsel for Mr. Mejia was unable to address them. Moreover, the prosecutors's rebuttal argument contained not just a single error. Rather nearly every argument area that the prosecutor covered in rebuttal contained a material misrepresentation or a statement that was not supported by any record evidence. These were serious errors that prejudiced Mr. Mejia on points that were sufficiently important and prejudicial to be covered in rebuttal by the government. Accordingly, Mr. Mejia is entitled to a new trial.

### III. THE GOVERNMENT'S MAIN WITNESS COMMITTED PERJURY AND THE GOVERNMENT FAILED TO CORRECT THE WITNESS' MISREPRESENTATION

When defense counsel was attempting to impeach the confidential informant with questions about whether he had ever lied in a federal proceeding or been found to be less than truthful by a federal judge, the confidential informant lied under oath. *See* Tr. Feb 29 am at 63. The transcript reflects the following question and answer:

>Q.    So you're testifying here today that you're not aware of a federal judge ever making a finding that you were not entirely truthful?
>
>A.    I have never read or heard any judge, federal judge for that matter, ever saying that I haven't been truthful in any of the cases I have testified on behalf of the U.S. Government.
>
>Q.    You haven't heard or -- you said you haven't heard or what?
>
>A.    Or read about any judge doubting my truthfulness. I have never seen that before.
>
>Q.    But what I'm asking you is whether you are in fact aware that this federal judge, Judge Aldrich, in that case in Tampa, found that you were not entirely truthful when you testified.
>
>A.    I didn't know any of that.
>
>THE COURT:    All right. That's the end of this.

TR Feb 29 am at 63.

Indeed, at the close of the government's rebuttal, when defense counsel brought the issue of the witness' false testimony to the Court's attention, the Court stated the issue "seems to me to be the subject matter for a posttrial motion, for a motion that I certainly will entertain. If you can establish, quite frankly, that that witness was untruthful on the stand and the Government knew he was being untruthful, the Government may have a problem." TR . Mar 5 pm at 26-27. The witness' perjury was even more prejudicial because the government, in its closing argument attempted to support his credibility by arguing that he had worked for several federal agencies for ten years without any problems. *See* TR Mar 5 am at 63. In pertinent part, the government argued that

>"The reality is, is that this informant, because of what he's done and what he's been able to do for the United States for the past 10 years, is that he's been very successful. He has never been written off by any of the government agencies. He continues to work for DEA, he

13

>continues to work for the FBI, he continues to work for the IRS. All
>of these different agencies utilize this informant. "

TR Mar 5 am at 63. In fact, given the government's knowledge of the federal judge's finding regarding the lack of truthfulness by the cooperator, this argument by the government was at best questionable. When coupled with the witness false denial that he had no knowledge of ever having been found less than truthful, it left the jury with a misleading sense that the cooperator's credibility and truthfulness had never been questioned.

IV. **THE EXPERT TESTIMONY PRESENTED DID NOT MEET THE STANDARD FOR EXPERT TESTIMONY**

During the trial, the Court allowed several witnesses to testify as witnesses. As the defense argued at trial, these witnesses were not sufficiently qualified to render expert testimony and their testimony did involved matters that were not the proper subject of testimony. This resulted in the admission of hearsay testimony that violated Mr. Mejia's Sixth Amendment right to confront the witnesses against him.

V. **MR. MEJIA IS ENTITLED TO A JUDGMENT OF ACQUITTAL**

When evaluating a motion for a judgment of acquittal, a court must determine whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crimes charged. *Jackson v. Virginia*, 443 U.S. 307 (1979). A judgment of acquittal is required where the government's evidence is insufficient to support a conviction. *Cephus v. United States*, 324 F.2d 893 (D.C. Cir. 1963). In this case, the evidence was insufficient as a matter of law to convict Mr. Mejia. In fact, what the evidence showed at most was not a conspiracy to import cocaine but rather a scam by the defendants who were fraudulently represented themselves to be high level Guatemalan officials when they in fact were not. No meeting of the minds sufficient to support a conviction for

conspiracy was therefore proved by the government.

**CONCLUSION**

These errors, singly and in combination, resulted in a fundamental miscarriage of justice and a conviction that violated the rights guaranteed to Mr. Mejia under the Constitution of the United States and resulted in an erroneous verdict. Mr. Mejia is factually and legally innocent of the crime for which she stands convicted. Accordingly, the Court should grant him a judgment of acquittal or, in the alternative, grant him a new trial to prevent a miscarriage of justice.

Mr. Mejia also respectfully requests an evidentiary hearing and leave to supplement this Memorandum.

Respectfully submitted,

/s/
Carmen D. Hernandez, Esquire
717 D Street, NW, Suite 310
Washington, DC 20004
(202) 628-0090; (202) 628-2881 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was electronically served this 14th day of April, 2008.

/s/ Carmen D. Hernandez

Carmen D. Hernandez, Esquire

*1.*